### Richmond

## PHILIP H. MYERS

### V.

## VIRGINIA STATE BAR, *Ex Rel.*,
## SECOND DISTRICT COMMITTEE

Record No. 820370.

January 20, 1984.

Present: All the Justices.

*Jerold G. Weinberg (Ann K. Kiley; Weinberg & Stein,* on briefs), for appellant.

*Dennis G. Merrill, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is an appeal of right from a decision of a three-judge court which held that appellant, Philip H. Myers, violated certain provisions of the Virginia Code of Professional Responsibility in his handling of the estate of Ira C. Erwin, Sr., and in his representation of Erwin's widow. The central issue is whether the claimed violations were proved by clear and convincing evidence. In *Blue* v. *Seventh District Committee,* 220 Va. 1056, 1061-1062,

265 S.E.2d 753, 757 (1980), we set forth the weight we will give, on review, to findings of fact in a disciplinary matter, and the nature of this Court's consideration of the record developed below:

[O]n review we will make an *independent examination of the whole record, giving the factual findings . . . substantial weight and viewing them as prima facie correct.* While not given the weight of a jury verdict, those conclusions will be sustained unless it appears they are not justified by a reasonable view of the evidence or are contrary to law.

(Emphasis added.) When this rule is applied to the facts of this case, it is clear that the three-judge court had ample evidence upon which to find that Myers violated the provisions of the Virginia Code of Professional Responsibility that are referenced in the court's suspension order. Therefore, we will affirm the judgment.

In the Complaint filed with the three-judge court, Myers was charged as follows:

Philip H. Myers misrepresented to his client, to the Commissioner of Accounts, and to the Circuit Court of the City of Norfolk the fee which he charged for services rendered to the estate of Ira C. Erwin, Sr. Philip H. Myers charged and collected a clearly excessive fee for services rendered the estate of Ira C. Erwin, Sr. Philip H. Myers failed to properly render appropriate accounts to Ruth V. Erwin, to the Commissioner of Accounts, and to the Circuit Court for the City of Norfolk for the estate of Ira C. Erwin, Sr. Such conduct is Misconduct in violation of Rules 1-102(A)(4) and (5), 2-105(A) and 9-102(B)(3) of the Virginia Code of Professional Responsibility.

In an Order of Suspension entered November 30, 1981, that court found as follows with respect to the charges against Myers:

1.  That Philip H. Myers violated Rules 1-102(A)(4) and (5) of the Virginia Code of Professional Responsibility in that he represented to his client that the Commissioner of Accounts for the Circuit Court of the City of Norfolk had approved a fee in the amount of $4,910.00 for services rendered the estate of Ira C. Erwin, Sr., when in

fact the Commissioner of Accounts had approved an executor's fee of $500.00.

2. Philip H. Myers violated Rule 2-105(A) of the Virginia Code of Professional Responsibility in that he charged and collected from Ruth V. Ervin, [sic] widow of Ira C. Erwin, Sr., fees totaling $5,410.00. Upon consideration of all legal services performed by Philip H. Myers on behalf of Ruth V. Erwin, such fees are clearly excessive.

3. [T]hat Philip H. Myers has not violated Rule 9-102(B)(3) of the Virginia Code of Professional Responsibility.

It was the unanimous decision of the three-judge court to suspend Myers' license to practice law in Virginia for a period of six months. The imposition of that punishment was suspended pending the outcome of this appeal.

The pertinent facts are as follows: the initial contact between Myers and the Erwins occurred in 1975. In October of that year, Ira and Ruth Erwin met with Myers to discuss the preparation of their wills. However, Myers was not authorized to prepare the wills until December, 1975. At that time, Mr. Erwin had entered the hospital for lung surgery. Myers received a call from Mrs. Erwin's sister, who told Myers that the Erwins wanted him to prepare the wills they had discussed in October and to bring the wills to the hospital so that they could be executed. Myers did as he was instructed. And, pursuant to the October discussion, he named himself as executor. The wills were executed at the hospital. Mr. Erwin died approximately nine months later, on September 16, 1976.

On October 7, 1976, Mrs. Erwin visited Myers' office to discuss her late husband's estate. She testified that at no time did Myers discuss with her the fee for serving as the executor of her late husband's estate, neither when the wills were prepared nor after her husband's death. Myers contends he told both the Erwins that executors were paid the "statutory fee" of five percent for estate work. Mrs. Erwin denied this. In other testimony, Myers claimed he told Mr. Erwin that an executor "got paid" five percent, that he tried to dissuade Mr. Erwin from naming him as executor because he did not want five percent of such a small estate, and that ultimately he told Mr. Erwin that he would serve as executor and private attorney for five percent of the real and personal property.

Of course, Mr. Erwin was not available to respond to Myers' contentions.

Mrs. Erwin's son, Ira C. Erwin, Jr., corroborated his mother's testimony with respect to the lack of any conversations with Myers concerning a five percent fee. Erwin, Jr. was present with his mother at most, if not all, of the meetings with Myers following Mr. Erwin's death. He testified that when he and his mother asked Myers how much it would cost to settle the estate, Myers said he had no knowledge at the time and would not give even a "ballpark figure." Erwin, Jr. said he did not recall any discussion of a five percent fee or of a $4,910.00 fee.

The estate did not contain any cash. Therefore, in order to defray the expenses of the estate, Mrs. Erwin turned over $12,000.00 to Myers in November, 1976, for Myers' use in paying bills associated with the estate. The $12,000.00 was deposited in Myers' escrow account on November 30, 1976.

On October 10, 1977, Myers filed with the Commissioner of Accounts for the City of Norfolk a document entitled "First Accounting." That accounting was rejected.

In October, 1978, Myers filed another accounting with the Commissioner of Accounts. This document was captioned as follows:

Virginia: In the Circuit Court of the City of Norfolk

IN THE MATTER OF PHILIP H. MYERS, Executor of the Estate of Ira C. Erwin, Sr.

This document was entitled "*Final Accounting* (Inclusive)." In this document, line entry No. 29 reads as follows:

"10/6/78 Philip H. Myers—Legal fees—Executor $500.00" This accounting was approved by the Commissioner of Accounts.

The evidence established that Mrs. Erwin had no knowledge of the "Final Accounting (Inclusive)" until she consulted another lawyer to question Myers' handling of the Erwin estate. The evidence also showed that Myers never sent Mrs. Erwin a copy of the October, 1978 accounting. Nor did he give the document to Mrs. Erwin's son when the Erwins demanded that Myers turn over all files pertaining to them. The evidence showed further that until questions were raised as to the fees taken by Myers, the Commissioner of accounts for the City of Norfolk had no knowledge of any accountings concerning the Erwin estate save for the October,

1977 accounting, which had been rejected, and the October, 1978 accounting, which had been approved.

In November, 1978, after he had received the Commissioner of Accounts' approval of a $500.00 fee for handling the Erwin estate, Myers sent Mrs. Erwin a document bearing the following caption:

Virginia: In the Circuit Court of the City of Norfolk

IN THE MATTER OF PHILIP H. MYERS, Executor of the Estate of Ira C. Erwin, Sr.

This document was entitled *"First and Final Accounting."* It contained the following line item:

"3/17/78     Fee to Philip Myers     $4,910.00"

The November, 1978 accounting was not sent to anyone other than Mrs. Erwin. Although Myers' secretary testified that she sent both the October and November accountings to the Commissioner of Accounts, the Commissioner said he received and approved only the October version. Moreover, Myers' testimony flatly contradicted his secretary's. According to Myers, the November version of the accounting was never sent to the Commissioner of Accounts.

Also pertinent is the language contained in the letter to Mrs. Erwin that accompanied the November version of the accounting. It reads, in relevant part, as follows:

Dear Mrs. Erwin:
Please be advised that as of October 25, 1978, the Estate of your late husband was examined by the Commissioner of Accounts *who has approved all of the income and expenditures therein*, vesting in you all of the assets of your late husband.

Enclosed please find an accounting of all monies deposited with this firm *indicating all of our expenditures*, along with our check in the sum of $1,143.72, *representing the balance of funds on hand at the time this Estate was approved and closed.*

(Emphasis added.) After Mrs. Erwin received this letter, she gave it to her son who consulted another attorney. When that attorney

reviewed the court file concerning the Erwin estate, he discovered, for the first time, the existence of the two accountings.

A comparison of the accounting sent to the Commissioner of Accounts and the one sent to Mrs. Erwin shows that the two documents overlap. Every item on the account sent to Mrs. Erwin is covered on the account sent to the Commissioner except for the reference to the $12,000.00 that Mrs. Erwin turned over to Myers and the $4,910.00 legal fee. Yet both documents bear the same caption. And they both clearly indicate that they relate to transactions regarding the Estate of Ira C. Erwin, Sr.

Along with the November version of the accounting, Myers also sent Mrs. Erwin a check for the amount he claimed remained in the Erwin account after the transactions set forth in the accounting. The back of that check contained a release such that if the check had been endorsed by Mrs. Erwin, Myers would have been able to argue that he was released from any and all obligations to her. The check was not signed by Myers and Mrs. Erwin did not endorse it.

At the suggestion of the attorney consulted by Erwin, Jr., the Erwins requested from Myers an explanation of his fee. Erwin, Jr. said that pursuant to the request for an explanation he went to Myers' office and was handed a handwritten memorandum. Erwin, Jr. did not see who prepared the memorandum. It was simply handed to him by Myers' secretary. Erwin, Jr. said when he picked up the memorandum Myers was in the office but did not speak to him. Nor did Myers' secretary give any explanation of the document.

The memorandum was admitted into evidence as an exhibit. It reads, in pertinent part, as follows:

| | |
|---|---|
| Total Estate | $104,508.13 at 5%<br> = $5,225.41 |
| Legal Fees | Dr. Mizroch, research—N.C. prop & out of state inheritance<br> $184.59 |
| | $65.00 pr hr. |

5,225.41
 184.59
5,410.41 [sic]

This document is an attempt to explain the total fee of $5,410.00 taken by Myers, $500.00 of which was approved by the Commissioner of Accounts in the October accounting and $4,910.00 of which was not approved by the Commissioner of Accounts but was nonetheless set forth in the November accounting. The memorandum clearly shows that the bulk of the fees were charged against the estate, while only a miniscule portion of the fees related to non-estate work. This memorandum is of particular evidentiary value because it was prepared prior to any challenge by the Erwins to the appropriateness of Myers' fee.

The Erwins' new counsel instituted several hearings concerning the propriety of Myers' handling the estate. During the course of those proceedings, Myers attempted to justify the fee by saying that he charged only $500.00 for work on the estate and that the remaining $4,910.00 was charged for work done on non-estate matters. This testimony directly contradicts the data contained in the handwritten memorandum, the contents of which are set forth above. According to that memorandum, a total of less than three hours' worth of work was done on non-estate matters. That memorandum clearly refers to every facet of the non-estate work which Myers said he completed. The reference to "Dr. Mizroch" relates to work on a medical question discussed in detail below. The reference to "N.C. prop" relates to work concerning a piece of property in North Carolina. The reference to "out of state inheritance" concerns a piece of property in West Virginia. Thus, prior to the litigation to discipline Myers, he had gone on record that the value of his work on non-estate matters was only $184.59.

Further, Myers' testimony is contrary to the description Myers attached to the fees when he captioned the November accounting as relating to a matter pending in the Circuit Court of the City of Norfolk concerning the Estate of Ira C. Erwin, Sr. Had the $4,910.00 been a fee for non-estate services, there was no need for it to be listed on a statement clearly labeled as concerning the estate.

Despite the existence of the memorandum, Myers attempted to prove that the $4,910.00 related to non-estate work by testifying that it represented time spent on handling property in West Virginia and North Carolina, and in researching a medical question relating to Mr. Erwin's cause of death. In effect, he has changed his position. First, according to the memorandum, he said the value of his work on non-estate matters was only $184.59; he later

contended that the same work was worth \$4,910.00. However, with regard to the West Virginia matter, Myers wrote only four one-page letters and says he spent only one hour. And with regard to the North Carolina matter, Myers' files contain no letters. He testified that he worked for four and one-half hours on the question of the North Carolina property and did everything by telephone. Even if his testimony with regard to these matters is accepted at face value, the work described comes nowhere near justifying a \$4,910.00 fee. Realizing this, Myers points to his medical research into the cause of Erwin's death as entitling him to most of the \$4,910.00 fee.

When Mr. Erwin died, his doctor described the cause of death as lung cancer. At the time Erwin was hospitalized for lung cancer, he was receiving disability payments for a work-related back injury. The nature of the policy which provided the disability payments was such that if Erwin died from the work-related injury the policy would have paid off the mortgage on his home. Thus, it would have benefitted Mrs. Erwin if the cause of death could be established to be the back injury instead of the lung cancer. As it was, Mr. Erwin's doctors concluded that he had lung cancer which metastasized resulting in degeneration of Mr. Erwin's spine, paralysis, and death.

Mrs. Erwin, her son, and Myers discussed the possibility of recovering under the insurance policy. Erwin, Jr. was asked to approach the doctors to see if there was any chance of changing the death certificate. Myers agreed to wait until he heard from the Erwins before he did any work on the insurance claim. Erwin, Jr. approached the doctors, found that a change in the death certificate was not likely, and told Myers in 1977 that there was no hope regarding the insurance.

Myers contends he started his research before he heard anything from the Erwins because he assumed they would be successful in changing the death certificate. He claims that by the time he heard from the Erwins he had completed more than seventy hours of pure medical research on whether Mr. Erwin's back injury could cause lung cancer. He did this research without consulting any doctors save unnamed individuals he came upon in the medical libraries he used. He did this research even though he is not trained in medicine. And he did it even though he admitted he would not have done it had he talked to Mr. Erwin's doctors at the outset and found that they would not change the death certifi-

cate. Myers said he did not want to approach Mr. Erwin's doctors because he thought he might "scare them off."

The result of this research is testified to have filled portions of six to seven legal pads. However, at trial only one legal pad with writing on portions of ten pages was available. The others are said to have been stripped from the file after the estate was closed. In addition, Myers testified that his voluminous research notes were thrown away even though he had not prepared for himself or Mrs. Erwin a research memorandum.

Myers submitted his 1977 Lawyer's Desk Book in support of his research claim. But the entries contained therein say nothing more than "Erwin Research." The entries do not describe what was being researched or where. It is even difficult to determine the length of time supposedly involved in the research. Moreover, in the vast majority of instances, the entry related to the "Erwin Research" is in a pen or ink different from those used on the other entries contained on a particular page. Further, whether Myers actually did the research he claims he did was called seriously into question when the court asked him how many types of lung cancer exist. Myers replied, "Soft-tissue cancer and then muscle cancer of the lung." The three-judge court recognized this as an uninformed, untutored response. In short, Myers' contention that he did more than seventy hours of medical research is unbelievable, contradicts the memorandum given to Erwin, Jr. to explain the fees, and was not believed by the three-judge court.

The evidence reveals that there was very little work for Myers to do in connection with the Erwin estate. The total value of personal property in the estate was $700.00. The total value of real estate was $92,000.00, but all that property was held by the Erwins as tenants by the entireties and passed to Mrs. Erwin upon her husband's death. In addition to this, Myers, by his own testimony, spent no more than five and one-half hours working on the matters concerning property in North Carolina and West Virginia. Thus, Myers' case to support this $5,410.00 fee rests largely upon his claim to have done medical research which he testified to have been unavailing and unnecessary, had he resorted to the simple expedient of talking to Mr. Erwin's doctors.

We are convinced from the foregoing that Myers misrepresented to his client, to the Commissioner of Accounts, and to the Circuit Court of the City of Norfolk the fee which he charged for services rendered to the Estate of Ira C. Erwin, Sr. He attempted

to prevent "the right hand from knowing what the left hand was doing." He charged a total fee for estate work of $5,410.00 but represented to the Commissioner that his fee was $500.00 and to Mrs. Erwin that the fee was $4,910.00. Further, he represented to Mrs. Erwin that the $4,910.00 had been approved by the Commissioner.

■ We are further convinced that Myers charged and collected a clearly excessive fee for services rendered to the Erwins. In our view, the three-judge court correctly concluded that for Myers to charge $5,410.00 for the work he did was clearly excessive.

In our judgment, the three-judge court committed no error. Accordingly, we will affirm the Order of Suspension which states that Myers' license to practice law within the Commonwealth of Virginia will be suspended for a period of six months. Such suspension shall commence February 29, 1984. We will further order that the attorney shall give notice, by certified mail, of his suspension to all clients for whom he is currently handling matters and to all opposing attorneys and presiding judges in pending litigation. He shall further make immediate appropriate arrangements for the disposition of those matters presently in his care in conformity with the wishes of his clients.

Thus, the order appealed from will be

*Affirmed.*